THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MANUEL ALBO, Appellant.

Court of Special Sessions, City of New York, Appellate Part, First Judicial Department, April 13, 1931.

*Jack Heller,* for the appellant.

*Thomas C. T. Crain,* District Attorney [*Edward Laughlin* of counsel], for the respondent.

KERNOCHAN, Ch. J.    The appellant was convicted of violation of section 722, subdivision 6, of the Penal Law, and the complaint

before the magistrate alleged that on the 7th day of January, 1931, in the elevator of the subway station at One Hundred and Eighty-first street and St. Nicholas avenue, in the county of New York, the appellant did " push and jostle an unknown individual, placing his (defendant's) left hand under overcoat and in proximity of said individual's left rear pocket of trousers worn by said individual." This allegation closely follows the wording of subdivision 6 of section 722 of the Penal Law.

Upon this conviction the magistrate sentenced the appellant to three months in the workhouse but stayed the execution of the sentence under certain specified conditions. This judgment is appealable (Code Crim. Proc. § 750) and from it this appeal has been taken.

Police Officer Frank J. Dun, of the pickpocket squad, was the only witness called by the People, and upon his testimony the conviction was based. He testified that at about five-fifteen P. M. he observed the appellant on the uptown platform of the Times Square subway station. The appellant boarded an uptown express train. A little later the officer, who was on duty looking out for pickpockets in the subway, boarded another uptown express train. No inference can be drawn from the evidence that he boarded this train in order to follow the appellant. The officer left the train at Ninety-sixth street. On the platform at Ninety-sixth street he again saw the appellant and recognized him as the man he had seen in the Times Square station. At Ninety-sixth street the appellant boarded an uptown Van Courtlandt Park train, and the officer entered the same car.

The appellant left the train at One Hundred and Eighty-first street and took the elevator to the street. The officer followed the appellant into the elevator which was crowded. All of this evidence is uncontradicted.

In this crowded elevator the officer testified that the appellant " placed himself behind an elderly man about 5 foot 10, apparently well dressed, and as the elevator was going up I observed the defendant place his left hand under the coat worn by the same unknown man and in the proximity of the left trousers pocket." The unknown man left the elevator apparently without being conscious of the presence of the appellant or the officer. After arresting the appellant the officer asked him where he lived and the appellant answered West One Hundred and Eightieth street and later gave his address as 216 West One Hundred and Sixteenth street. The officer admits, however, that the appellant, a Spaniard, may not have understood his question. The officer also said that the appellant said he was a cigar maker employed by one Rosen-

berg at 126 West Twenty-third street. The fact that the defendant was employed at that address was proved at the trial without contradiction.

The appellant testified that he was a married man living with his wife at 216 West One Hundred and Sixteenth street and was the father of a ten-year old boy; that he left his place of business, 126 West Twenty-third street, at about five P. M.; that he traveled from Times square to Ninety-sixth street on the subway as testified by the officer and at Ninety-sixth street had to change in order to get a Van Courtlandt Park train. He said he was going to West One Hundred and Eighty-first street to look for a job as a cigarmaker.

He alighted at the One Hundred and Eighty-first street station and entered the elevator, which was crowded, to go to the street; that he was standing directly behind the elevator operator with his hands in his overcoat pockets. As he alighted the officer arrested him and told him he had a thief's face. The appellant also testified that he had never been arrested or convicted of crime. The testimony also shows that the appellant was not known to the arresting officer.

It was also established by the testimony that the appellant was employed as he says he was, and two witnesses testified to his good reputation.

A reversal is asked in this case on the ground that the verdict is against the weight of the evidence. The point is made that there is no evidence to show that the appellant pushed against any one, simply the statement of the officer that he placed his hand in the proximity of the unknown man's trousers pocket. There is no evidence that the appellant jostled against the unknown man or unnecessarily crowded him. The only testimony as to pushing is on page 15 of the minutes: " Q. Was he pushing this man in front of him? A. No. Q. He was not? A. Yes, going out of the elevator." Bearing in mind that the elevator was " jammed," this does not seem especially culpable.

This section of the Penal Law is especially directed against pickpockets, and enables the police officer to make an arrest before the crime of larceny from the person has been consummated.

Due to the stigma attached to a conviction obtained under this section the evidence should clearly and certainly point to guilt, and, therefore, the trier of the facts should very carefully weigh the evidence. In this case the testimony of the officer is not by any means conclusive. He says the elevator was " jammed." He does not testify to any jostling or crowding by the appellant as the elevator was ascending, only when it had completely ascended does

he testify that the appellant pushed against the man. The officer even though he did not know the appellant must have been very suspicious of him. He was especially assigned to watch out for pickpockets and he had seen the appellant twice before on two stations of the subway. Although his suspicions were not aroused at Times square, for he says he did not follow the appellant, they certainly were when he again saw him on the Ninety-sixth street station. He was, therefore, bound to regard every act of the appellant in the elevator as suspicious.

On the other hand, the good character of the appellant, his good working record and his truthful explanation as to his presence at the place of the arrest, must be given great weight against the evidence of an undoubtedly suspicious police officer. In my opinion the magistrate did not give sufficient weight to this testimony offered by the defense.

Another point raised in this appeal, namely, that " the sentence was entirely too harsh and not in proportion to the alleged crime " is not so well taken. If the appellant was attempting to pick pockets the judgment was far too lenient. The fact that the judgment of three months in the workhouse was stayed seems to me to be explained in this way: that the magistrate after hearing the report of the probation officer felt that the acts of the appellant in the elevator were more innocent than appeared from the testimony of the police officer.

The judgment should be reversed as against the weight of the evidence.

HERBERT and VOORHEES, JJ., concur.

Judgment reversed on the facts, new trial ordered.